UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                  :

CHRISTOPHER A. SOUTH,               :
                                                  :

                          Plaintiff,       :
                                                  :       15cv1627

        -against-                  :
                                                  :       OPINION & ORDER

CONTINENTAL CASUALTY COMPANY,  :
                                                  :

                          Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

           Plaintiff Christopher A. South, an attorney, brings this employment discrimination action in connection with his termination from Defendant Continental Casualty Company ("CNA").  Specifically, South alleges violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, Section 296 of the New York State Human Rights Law ("NYSHRL"), and Title VIII of the New York City Administrative Code ("NYCHRL").  With discovery complete, CNA moves for summary judgment dismissing the action.  For the reasons that follow, CNA's motion is granted with respect to the ADEA and NYSHRL claims.  South's NYCHRL claims are dismissed without prejudice to refiling in state court.

<u>BACKGROUND</u>

           CNA is a large property and casualty insurance organization with staff counsel offices that service CNA's insureds.  (<u>See</u> Pl. Counter Statement of Undisputed Facts ("56.1"), ECF No. 64, at ¶¶ 3, 10.)  In 1996, CNA hired South as a litigator in its NYC staff counsel office.  South spent 18 years in the NYC staff counsel's office until his termination in September 2014 at the age of 60.  (56.1, ¶¶ 10, 123.)  In 2000, CNA discontinued its pension plan for newly hired attorneys, but continued the participation of all incumbent attorneys, including South.

1

(56.1, ¶¶ 17–18.)  South contends that the discontinuation of the plan was a motivating factor for eliminating the older attorneys at CNA.  (See Declaration of Christopher South, dated July 15, 2016 ("South Decl."), ECF No. 65, at ¶ 4.)

   In 2001, CNA appointed Charles Siegel as the Managing Trial Attorney for its New York office.  (56.1, ¶ 12.)  Four years later, CNA reorganized its attorney staffing by establishing the Major Case Unit ("MCU") to handle complex and high value cases.  (56.1, ¶¶ 69, 72.)  The MCU, consisting of certain CNA executives and management-level employees, designated attorneys from each staff counsel office to handle MCU cases.  (56.1, ¶ 73.) Generally, those attorneys were viewed as the most capable of handling major cases.  (See 56.1, ¶ 79.)  Siegel had no authority to select attorneys for MCU and needed authorization to assign an MCU case.  (56.1, ¶¶ 75–76.)  Despite his years of experience, CNA did not designate South as an MCU attorney.  Non-MCU approved attorneys, like South, handled the mine-run cases with reserve value below $150,000.  MCU and non-MCU attorneys had the same pay grades.  (56.1, ¶ 80.)

   When MCU was first established, non-MCU attorneys continued to handle some MCU cases that they had worked on before the reorganization.  (56.1, ¶ 87.)  Overwhelmed by the number of MCU cases in the New York office, Siegel sought to use Service Center attorneys, like South, to handle MCU matters.  (56.1, ¶ 93.)  But Siegel's efforts were rebuffed: CNA declined to authorize South to work on MCU matters.  (56.1, ¶ 85.)  MCU supervisors reviewed South's work on Service Center cases that were reclassified to MCU and found some of his work to be inadequate.  (56.1, ¶ 78, 135.)

   During his tenure, South earned mostly average performance reviews.  For example, in 2009, South received a "Meets Expectations" rating.  (56.1, ¶ 23.)  As part of that

review, Siegel explained to South that he needed to "be more proactive in his reporting . . . to be more customer focused and . . . develop his skills with technology." (56.1, ¶¶ 25–26.) South responded to that criticism and earned an "Exceeds Expectations" rating in 2010. (56.1, ¶ 27.) However, in 2011, South dropped back to "Meets Expectations." (56.1, ¶ 28.)

In 2011, CNA reiterated the need for staff counsel offices to ensure that MCU matters were handled exclusively by MCU-designated attorneys. (56.1, ¶ 88.) CNA directed Siegel to reassign MCU matters from Service Center attorneys and recognized that this realignment might require additional MCU attorneys in the New York office. (56.1, ¶¶ 88–89.) Nevertheless, Siegel continued to use Service Center attorneys on MCU cases by assigning the MCU cases to himself and then working with Service Center attorneys, like South. (January 29, 2016 Deposition of Charles Siegel, at 67:10–25.)

In 2012, Siegel rated South as "Meet[ing] Expectations." (56.1, ¶ 29.) South disagreed and ranked himself as "Far Exceeds Expectations" in his self-evaluation. (56.1, ¶ 31.) Once again, Siegel noted problems in some of South's files that were transferred to MCU and commented that South needed to be more proactive. (56.1, ¶¶ 30, 31.)

In 2013, at South's mid-year review, Siegel was critical, noting

> I am concerned about the total analysis of your files via your reporting. You need to expand your analysis to address all aspects and issues of the case and be proactive in obtaining information . . . . [Y]ou need to reach out to all witnesses and find out what they know. . . . You can't wait for the information to come to you.

(56.1, ¶ 32.) In other sections of the review, Siegel reiterated the need for South to be proactive and develop better client relationships. (56.1, ¶¶ 33–34.) And again, South rejected Siegel's criticism with a pejorative term and asserted that he was the "[b]est trial attorney" in the New York office. (56.1, ¶ 35, 36.)

Aside from formal job evaluations, Siegel met with South to discuss his performance.  (56.1, ¶ 37.)  For example, Siegel expressed concern over South's failure to question a plaintiff at deposition about any prior criminal history.  (56.1, ¶ 38.)  On another occasion, South failed to respond to a default judgment motion and treated it as a nullity.  (56.1, ¶ 39.)  Siegel learned of the default when opposing counsel contacted him.  (56.1, ¶ 39.)  In addition, CNA clients, such as its HealthPro department, provided feedback on South, commenting that he was an "okay attorney" but that they had to "stay on top of him to report back," and that he would "go with the flow instead of pushing a case."  (56.1, ¶ 42.)

In December 2013, Siegel issued performance deficiency letters to South and two other attorneys in the New York office, one age 64 and the other age 56.  (56.1, ¶¶ 45, 48.)  Siegel's letter to South summarized South's failure to draft initial status updates and investigate cases thoroughly.  (See 56.1, ¶¶ 50–55.)  In one case South took 5 months to prepare an initial report, and in another, South took two years to implead a third party for indemnity.  (56.1, ¶ 50-52.)  CNA gave South forty-five days to improve.  (56.1, ¶ 56.)  Thereafter, South responded with near-weekly emails summarizing his performance and explaining why he disagreed with Siegel's assessment.  (Rule 56.1, ¶ 57.)

Ultimately, South's 2013 year-end performance review dropped to "Partially Meets Expectations."  (56.1, ¶ 23.)  In that evaluation, Siegel noted that MCU asked that some of South's cases be evaluated for transfer (56.1, ¶ 60), that his reporting was sporadic (56.1, ¶¶ 60–61), and that his claims' partners complained about his issue recognition and reporting (56.1, ¶ 62).

South did not challenge any of Siegel's comments in the 2013 performance review.  At deposition, South acknowledged that he did not believe they were attributable to his

age, rather he maintained that some comments were intended to create a record of subpar performance for future disciplinary action.  (56.1, ¶¶ 66–67.)

By 2014, the MCU caseload had increased considerably, while the Service Center caseload had declined.  (56.1, ¶¶ 96–99.)  The need for additional MCU attorneys was obvious. A CNA executive explained to Siegel that he would need to implement a reduction in force ("RIF") of Service Center attorneys in order to hire MCU-attorneys.  (56.1, ¶ 101.)  In February 2014, Siegel began rating attorneys in multiple categories, including technical knowledge, technical skills, customer focus, professional integrity, focus on results, analyzes/solves problems, and teamwork and collaboration.  (56.1, ¶ 102.)  Among the 17 attorneys in the New York office, South received the lowest overall ranking.  (56.1, ¶ 103.)

While CNA wanted to initiate the RIF in June 2014, Siegel put it off because he had not hired MCU-approved replacements.  (56.1, ¶ 114.)  South's 2014 mid-year evaluation offered similar critiques as his 2013 year-end review.  (56.1, ¶ 68.)  By August 2014, Siegel hired three new MCU-approved attorneys.  (56.1, ¶ 125.)  Thereafter, updating his prior evaluations of all attorneys in the New York office, Siegel rated South as one of three attorneys with the lowest overall scores.  (56.1, ¶¶ 115–18.)  CNA terminated South and two other attorneys on September 15, 2014.  (56.1, ¶ 123.)

After the RIF, Siegel promoted a 59-year old attorney within the New York office to Assistant Managing Trial Attorney.  (56.1, ¶ 129.)  Siegel had given that attorney the highest rating in the August 2014 evaluations.  (56.1, ¶ 119.)

STANDARD

Summary judgment is appropriate only where all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). But "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (citations and internal quotations omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir.2010) (citations omitted). In addition, self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and to defeat a motion for summary judgment. See BellSouth Telecommunications, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996).

DISCUSSION

I.   Employment Discrimination Claims

    a.   Framework

6

Employment discrimination claims under the ADEA, the NYSHRL, and the NYCHRL are subject to the McDonnell Douglas burden-shifting standard. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 316-17 & n.2 (2d Cir. 1999); Arnow v. Aeroflot Russian Airlines, 980 F. Supp. 2d 477, 486 (S.D.N.Y. 2013) ("Courts in this Circuit also analyze NYSHRL and NYCHRL discrimination claims under the McDonnell Douglas burden-shifting framework described above."). Under this standard, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014). To establish a prima facie case for age discrimination under the ADEA and NYSHRL, a plaintiff must prove (1) that he was a member of a protected class, (2) that he was qualified for the position, and (3) that he experienced an adverse employment action,[1] (4) under circumstances giving rise to an inference of discrimination. Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). "The burden of proof that must be met to establish a prima facie case is minimal." Hollander v. Am. Cyanamid Co., 172 F.3d 192, 199 (2d Cir.1999). "[A] plaintiff must come forward with some evidence, beyond merely stating that he is a member of a protected class who suffered an adverse employment decision." Williams v. Palladia, Inc., No. 07-CV-7720 (CM), 2009 WL 362100, at *7 (S.D.N.Y. Feb. 10, 2009). But "[g]enerally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000).

If this burden is met, the defendant must then "articulate some legitimate, nondiscriminatory reason for its action." Delaney, 766 F.3d at 168. If the defendant meets its burden, then "the plaintiff can no longer rely on the prima facie case, but must prove that the

---

[1] For NYCHRL claims, a plaintiff need not establish an adverse employment action. Instead, the plaintiff need only show that he was "treated differently from others in a way that was more than trivial, insubstantial or petty." Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011).

employer's proffered reason was a pretext for discrimination." Delaney, 766 F.3d at 168

(citations and internal quotations omitted).

      Under the final step of the McDonnell Douglas analysis, the burden shifts back to

the plaintiff to prove that the legitimate, non-discriminatory reason for termination was mere

pretext.  At this stage, courts "analyze NYCHRL claims separately and independently from any

federal and state law claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102,

109 (2d Cir. 2013).  For ADEA and NYSHRL claims, the "plaintiff must show that age was a

'but-for' cause of the employer's action." Chapotkat v. Cty. of Rockland, 605 F. App'x 24, 26

(2d Cir. 2015); Delaney, 766 F.3d at 168.  This condition "is not equivalent to a requirement that

age was the employer's only consideration, but rather that the adverse employment action would

not have occurred without it." Delaney, 766 F.3d at 169 (brackets omitted).  Ultimately, to resist

summary judgment on ADEA and NYSHRL claims, "a plaintiff must demonstrate that a

reasonable jury could conclude by a preponderance of the evidence that the employer's

explanations are pretextual and that, but for the plaintiff's age, the employer would not have

taken the action it did." Chapotkat, 605 F. App'x at 26 (citing Gorzynski v. JetBlue Airways

Corp., 596 F.3d 93, 107 (2d Cir. 2010) (finding that a plaintiff must "raise[] sufficient evidence

upon which a reasonable jury could conclude by a preponderance of the evidence that . . . age

was a 'but for' cause of [the] decision to fire [the plaintiff.].").

      By contrast, "the NYCHRL requires showing that age was only a 'motivating

factor,' rather than the 'but for cause,' of an adverse employment action." Weiss v. JPMorgan

Chase & Co., No. 06-CV-4402, 2010 WL 114248, at *4 (S.D.N.Y. Jan. 13, 2010); Teasdale v.

New York City Fire Dep't, FDNY, 574 F. App'x 50, 51 (2d Cir. 2014) ("[Defendant] is entitled

to summary judgment on this basis only if the record establishes as a matter of law that

discrimination played <u>no</u> role in its actions.").  While "interpretations of analogue state and federal statutes may 'be used to aid in interpretation of [the NYCHRL]' to the extent such interpretations serve as 'a floor below which' the NYCHRL cannot fall," <u>Curry v. Fed. Express Corp.</u>, 2016 U.S. Dist. LEXIS 51018, *13 (S.D.N.Y. Mar. 16, 2016) (citation omitted), claims under the NYCHRL are construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," <u>Albunio v. City of New York</u>, 16 N.Y.3d 472 (N.Y. 2011), and "'more liberally' than their federal and state counterparts," <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009).

In the end, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" <u>Vivenzio v. City of Syracuse</u>, 611 F.3d 98, 106 (2d Cir. 2010) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).  The defendant "will be entitled to summary judgment . . . if the record establishes as a matter of law that discrimination played <u>no</u> role in its actions."  <u>Mihalik</u>, 715 F.3d at 110 n.8 (emphasis added) (citation and internal quotation omitted).

    b.  <u>Federal and State Age-Based Discrimination Claims</u>

The record here does not support an inference of discrimination for the ADEA or NYSHRL claims because South was not replaced by a younger attorney as "no new employees were hired to assume [his] duties."  <u>Kirkland v. New York City Transit Auth.</u>, No. 11-CV-4038 (PAC), 2015 WL 5164827, at *11 (S.D.N.Y. Sept. 3, 2015).  The RIF eliminated only Service Center employees, who are not similarly situated with MCU attorneys.  The new hires were MCU attorneys, a position for which South was never approved.  (56.1, ¶¶ 85–86; 96–99.)

Even assuming South established a prima facie case for discrimination—which he did not—CNA rebutted the presumption of discrimination. "[A] RIF constitutes a legitimate, nondiscriminatory reason for termination of employment." Delaney, 766 F.3d at 168. And an employee's performance and ranking can provide a legitimate, nondiscriminatory reason for selection in an RIF. See Delaney, 766 F.3d at 169 ("Delaney was ranked 136th among all other BoA sales personnel and had the worst performance of employees in his group at his level."). Here, CNA experienced a reduction in Service Center cases and an increase in MCU cases. (56.1, ¶¶ 96–99.) Faced with the need to eliminate Service Center employees in order to take on additional MCU employees, Siegel ranked his employees and terminated those with the lowest ranking. (56.1, ¶¶ 100-01.) South was among the three lowest-rated attorneys and was terminated. (56.1, ¶ 118.)

South contends that the creation of the MCU and subsequent RIF were mere pretext for discrimination. He believes that the MCU was created and utilized as "the vehicle by which work was taken away from . . . older attorneys and given to younger attorneys who were new hires," at least in part to eliminate employees on CNA's discontinued pension plan. (See 56.1, ¶ 134; South Decl. ¶ 4.) South's pension plan was discontinued in 2000, 14 years prior to his termination. (56.1, ¶¶ 17–18, 123.) The MCU was established in 2005, nine years prior to South's termination. (56.1, ¶¶ 69, 123.) But no facts support the allegation that the RIF was the culmination of a 14-year long discriminatory plan.[2] Indeed, South's selection for the RIF was entirely separate from the fact that he was not approved for MCU work: Siegel and Brian

---

[2]    The ages of CNA new hires outside of the New York office further undermine any notion of discrimination. (See Declaration of Stephen Perry, dated August 1, 2016, ECF No. 72, ¶¶ 2–3, Ex. A; Declaration of Shelly Liapes, dated July 28, 2016, ¶¶ 2–3, Ex. A.)

Granstrand, who selected attorneys for the RIF, played no role in the creation of the MCU or selection of its attorneys.  (56.1, ¶¶ 75–76.)

Moreover, the age of the attorneys selected for an RIF is insufficient to establish discrimination.  See Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) ("Even if [plaintiff] were the oldest nursing assistant at the time of her termination, that fact, standing alone, would not provide a sufficient basis to infer that [defendant] has a bias against older employees.").  This is particularly true where the age demographics of the remaining attorneys belie an inference of discrimination.  See Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 657 (2d Cir. 2009) ("[T[he reduction in force left a considerable number of ADEA-protected employees in their jobs, while claiming the jobs of a number of younger employees, facts which the district court correctly found were highly indicative of a lack of discriminatory intent.").

As an initial matter, the New York office had an older workforce, with only one attorney outside of the ADEA's protected age class.  29 U.S.C. § 631(a).  After the RIF, four of the seven remaining Service Center employees were over the age of 55, with the entire group ranging from 41 to 65 years old.  (56.1, ¶ 127.)  Similarly, after the RIF, seven of the eight MCU-approved attorneys were over 40 and two were older than Plaintiff.  (56.1, ¶ 127.)  See Colon v. Trump Int'l Hotel & Tower, No. 10-CV-4794 (JGK), 2011 WL 6092299, at *7 (S.D.N.Y. Dec. 7, 2011) ("[T]he fact that four of the other five Assistant Housekeeping Managers were in the plaintiff's protected age group and remained on the job after the plaintiff's termination undermines her claim that she was terminated because of her age."); Vormittag v. Unity Elec. Co., No. 12-CV-4116 (RJD), 2014 WL 4273303, at *4 (E.D.N.Y. Aug. 28, 2014) (dismissing age discrimination claims of plaintiff who was 62-years old at time of RIF, noting

that defendant "ha[d] an older workforce" and "only twenty-eight" of the 150 eligible employees

"were under forty and nine were fifty-five or older"); Deebs v. Alstom Transp., Inc., 550

F.Supp.2d 385, 391 (W.D.N.Y.2008), aff'd 346 F. App'x 654 (2d Cir.2009) (demographics did

not imply age discrimination when, after RIF, majority of workforce remained over forty).

        Any inference of age discrimination is further undermined by the promotion of

Jack Cohen.   Cohen was one of the older attorneys in the New York office at 58 years old, yet

he received the highest rating in the office during the RIF-ratings.  (56.1, ¶ 127.)  One year after

the RIF, at 59 years old, he was promoted to Assistant Managing Trial Attorney.  (56.1, ¶ 129.)

        And "[c]ourts draw an inference against discrimination where the person taking

the adverse action is in the same protected class as the effected employee."  Baguer v. Spanish

Broad. Sys., Inc., No. 04-CV-8393 (RJS), 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010).

At the time of Plaintiff's termination, Siegel, who ranked the attorneys for the RIF and was in the

same pension plan as South, was 63 years old.  (56.1, ¶ 6.)  Granstrand, who played a role in the

RIF but had no knowledge of the attorney's ages, was 59 years old.  (56.1, ¶¶ 7, 120.)[3]  See Shai

Ben-Levy v. Bloomberg L.P., No. 11-CV-1554, 2012 WL 2477685, (S.D.N.Y. June 26, 2012).[4]

        Additionally, "[w]hile evidence of direct discriminatory comments are not

necessary to sustain case alleging discrimination, the absence of such comments may be

---

[3]      South denies Granstrand's knowledge solely by citing "Plaintiff's testimony."  However, South presents no personal knowledge to support this assertion and his own testimony on the matter is insufficient.  See Twomey v. Quad/Graphics, Inc., No. 13-cv-1109 (RA), 2015 WL 5698002, at *10 (S.D.N.Y. Sept. 28, 2015) (finding no pretext where decision-maker testified "that he did not know the ages of Plaintiff . . . terminated during [RIF]" and rejecting plaintiff's denial because he "failed to point to any evidence—direct or circumstantial—in the record that would refuse [the] assertion"); Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 656 (2d Cir. 2009) (rejecting plaintiff's reliance on "their own deposition testimony" as "self-serving").  What is more, South fails to provide pin cites, instead citing to deposition transcript as a whole.  But "facts submitted by either party . . . 'must be followed by citation to evidence which would be admissible.'  Local Rule 56.1(d).  If they are not, they risk being disregarded."  Hill v. Bloomberg L.P., No. 14-CV-9809 (CM), 2016 WL 1665599, at *1 (S.D.N.Y. Apr. 20, 2016).  Nevertheless, this Court conducted its own review of the record for this motion.

[4]      The management-level CNA employees who implemented and ran the MCU, but were not involved in termination decisions, were 58 and 66 at the time of the RIF.  (56.1, ¶¶ 9, 70).

considered by the court." Francis v. Pactiv Corp., No. 04-CV-0417 (WDW), 2007 WL 879672,

at *13 (E.D.N.Y. Mar. 21, 2007); see also Tojzan v. New York Presbyterian Hosp., No. 00-CV-

6105 (WHP), 2003 WL 1738993, at *4 (S.D.N.Y. Mar. 31, 2003) (explaining that plaintiff's

admission that no employee commented on his age undermined age discrimination claim).  South

points to several incidents that he claims support an inference of discrimination, yet fails to point

to a single fact tying the incident to age-based discrimination.

      For instance, in 2005, he claims that Siegel "threw [him] under the bus during a

call" by failing to stand up for South when his report was described as "terrible."  (56.1, ¶ 135.)

Yet South acknowledges that he "ha[d] no idea" if it was because of his age.  (56.1, ¶ 136.)  In

2007, Siegel told one of South's peers who was not selected for the RIF that his presentation on

an MCU case "made him look like a deer in the headlights," and later took the case away from

that attorney.  (56.1, ¶ 138.)  At that same meeting, a CNA executive in charge of the MCU

walked away from South after asking him a question, while South was in the midst of

responding.  (56.1, ¶ 139.)  Again, however, South admits that neither Siegel nor the CNA

executive made any reference to age (56.1, ¶ 140), and points to no other evidence suggesting

discrimination.  While this treatment may be impolite, anti-discrimination statutes "do not set

forth a general civility code for the American workplace."  Lorquet v. Century 21 Dep't Stores,

LLC, No. 15-CV-5965 (WHP), 2016 WL 4530904, at *2 (S.D.N.Y. Aug. 4, 2016).

      Rather, the evidence suggests the opposite.  South acknowledges that neither

Siegel nor anyone in a managerial position, ever made derogatory or negative comments

concerning Plaintiff's age (56.1, ¶¶ 152–53), and that he never complained to Human Resources

about discrimination, despite routine meetings to discuss benefits and company policies (56.1,

¶ 144.)  See Osborne v. Literacy Partners, Inc., No. 04-CV-6652 (DAB), 2007 WL 2298354, at

*6 (S.D.N.Y. Aug. 9, 2007) ("That [plaintiff] never saw the need to file an internal complaint . . .

signifies that she did not believe that discrimination was a substantial problem while she worked

there.").

        Nor does South's selection for the RIF raise an inference of discrimination.  It is

well established that "[a] plaintiff is not entitled to a trial based on pure speculation, no matter

how earnestly held."  Ali v. Mount Sinai Hosp., 1996 U.S. Dist. LEXIS 8079, at *22–23

(S.D.N.Y. Jun. 12, 1996).  This Court has no doubt that South believed he was the best attorney

in the New York office.  (See 56.1, ¶¶ 35–36.)  But his performance reviews leading up to the

RIF remained consistent and the comments in his December 2013 performance deficiency letter

were the same deficiencies leading to South's low rating in February and August 2014.  (See

56.1, ¶¶ 51, 54, 55, 103, 108.)  "Without more . . . [plaintiff's] disagreement with [manager's]

assessment of his performance simply does not evidence discriminatory intent."  Hill v.

Bloomberg L.P., No. 14-CV-9809 (CM), 2016 WL 1665599, at *10 (S.D.N.Y. Apr. 20, 2016);

Hu v. UGL Servs. Unicco Operations Co., No. 13-CV-4251 (LGS), 2014 WL 5042150, at *6

(S.D.N.Y. Oct. 9, 2014) ("[a] plaintiff's subjective disagreement with his reviews is not a viable

basis for a discrimination claim.").

        In the end, South has failed to meet his burden under the ADEA and NYSHRL:

No reasonable jury could find that age was the but-for cause of his determination.  Accordingly,

CNA is entitled to summary judgment on the ADEA and NYSHRL claims.

II.   Hostile Work Environment

        To establish a hostile work environment claim under the ADEA or NYSHRL, a

plaintiff must "produce enough evidence to show that the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014).  Unlike the ADEA and NYSHRL, "the NYCHRL allows liability to attach for harassing conduct that does not qualify as 'severe or pervasive . . . ,' [rather] the primary issue for a trier of fact in harassment cases . . . is whether the plaintiff has proven by a preponderance of the evidence that []he has been treated less well than other employees because of a protected characteristic." Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303 (KAM), 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013). Nevertheless, "the NYCHRL is not a general civility code and when the conduct alleged is far from a borderline violation of the NYSHRL, then the plaintiff has failed to state a claim under the NYCHRL, as well." Erasmus v. Deutsche Bank Americas Holding Corp., No. 15-CV-1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (internal citations and quotation marks omitted).

A defendant may raise an affirmative defense against hostile work environment claims under the ADEA  where  "(a) . . . the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 745 (1998).[5] "One way for employers to demonstrate that they exercised reasonable care is to show that they had an anti-harassment policy in place." Finnerty v. William H. Sadlier, Inc., 176 F. App'x 158, 162 (2d Cir. 2006).  "Once an employer has satisfied its initial burden of demonstrating that an employee has completely failed to avail [him]self of the complaint procedure, the burden of

---

[5]       This defense is not available under the NYCHRL, see Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (N.Y. 2010) ("[T]he plain language of the NYCHRL precludes the Faragher–Ellerth defense."), and "it is unclear that the Faragher/Ellerth defense applies to claims brought under the NYSHRL," see Gorman v. Covidien, LLC, 146 F. Supp.3d 509, 521 (S.D.N.Y. 2015).

production shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures.  The employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion."  <u>Leopold v. Baccarat, Inc</u>, 239 F.3d 243, 246 (2d Cir. 2001).

Here, Plaintiff received a copy of CNA's Human Resources Policy Manual, which contains harassment policies and provides a mechanism to report harassing behavior. (56.1, ¶¶ 15–16.)  In particular, CNA's "Harassment-Free Workplace" policy provides that employees who believe they were subjected to inappropriate or unfair conduct can contact Human Resources or CNA's Compliance Hotline.  (56.1, ¶ 15.)  And CNA's "Open-Door" policy provides that employees may report any workplace issues to another CNA manager, Human Resources, Employee Relations, a member of the Law Department, a member of Corporate Investigations, or the Compliance Hotline.  (56.1, ¶ 15.)

Over the course of his employment, South met with Human Resources multiple times to discuss benefits and company policies.  (56.1, ¶ 144.)  However, despite these "routine meetings" with Human Resources, South never complained about discrimination to anyone. (56.1, ¶ 144.)  South admits he failed to utilize CNA's anti-harassment policies and provides no rationale for this failure.  Accordingly, no reasonable juror could find that CNA failed to exercise reasonable care in preventing and correcting promptly harassing behavior or that South acted reasonably in failing to take advantage of CNA's anti-harassment policies.

Even if South utilized CNA's anti-discrimination policies, the conduct he complains of did not create a hostile work environment.  South's claim is centered on four facts: (1) Siegel asked South to leave a room during a client meeting and, thereafter, removed South from the client's case, (2) Siegel referred to MCU-designated attorneys as "elite," (3) a CNA

16

executive asked that South be removed from MCU matters, and (4) Siegel commented to South that he was not qualified to handle MCU cases because of his mishandling of such cases in the past.  (56.1, ¶¶ 148–51.)

But "a hostile work environment is actionable . . . only when it occurs because of . . . [a] protected characteristic."  Bliss v. MXK Rest. Corp., No. 16-CV-2676, 2016 WL 6775439, at *2 (S.D.N.Y. Nov. 14, 2016).  Siegel's one time reference to MCU attorneys as elite makes no reference to age.  The only link between Siegel's description of MCU-attorneys and South's age is South's allegation that older attorneys were not approved to handle MCU matters.  But that mischaracterizes the record.  (See 56.1, ¶ 127.)  South similarly fails to show the remaining allegations have any relation to his age.  South admits that he was not subject to insults because of his age and that no one at CNA ever made derogatory comments about his age.  (56.1, ¶¶152–53.)  No other facts support South's harassment allegations.[6]  (56.1, ¶ 154.)

Moreover, "[c]lose monitoring and mild rudeness is typically not so severe as to be abusive, particularly in a situation such as this, where there is no indication that the behavior was linked to plaintiff's [protected class]."  Early v. Wyeth Pharm., Inc., 603 F. Supp. 2d 556, 580 (S.D.N.Y. 2009).  Three of South's instances of "harassment" are focused on his performance and his removal from cases, not his age.  But criticism of his performance is insufficient for a hostile work environment claim.

---

[6] Although South admitted no other facts support his harassment allegations, South's declaration and memorandum rely on two additional allegations: an instance in which an email was not circulated recognizing that South won a defense verdict after a jury trial and a requirement that he send "weekly reports" summarizing his performance.  (South Decl., ¶¶ 7, 10.)  However, South provides no support for the former statement and South's own admission contradicts the latter.  (See 56.1, ¶ 57.)

In the end, even if South could connect these discrete instances to his age, they still fail to give rise to a claim of a hostile work environment.  Accordingly, his hostile work environment claims under the ADEA and NYSHRL are dismissed.

III.   Supplemental Jurisdiction

Having dismissed all of South's federal claims, this Court must consider whether to exercise supplemental jurisdiction over South's remaining NYCHRL claims.  "[A] district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

"Discrimination claims brought under the NYCHRL are evaluated under a more permissive standard than analogous federal claims."  Johnson v. IAC/Interactive Corp., 2 F. Supp. 3d 504, 518 (S.D.N.Y. 2014).  And "[i]n this circuit, 'courts regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed.'"  Morant v. Physicians Affiliate Grp. of N.Y., P.C., No. 14-CV-0067, 2014 WL 3964153, at *2 (S.D.N.Y. Aug. 13, 2014) (quoting Harris v. NYU Langone Med. Ctr., No. 12-CV-0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014)); Charley v. Total Office Planning Servs., Inc., No. 14-CV-85 (NRB), 2016 WL 4705164, at *5 (S.D.N.Y. Aug. 23, 2016) ("[D]istrict courts frequently decline to exercise supplemental jurisdiction over state employment discrimination causes of action when the federal claims have been resolved . . . and the record in this case is not so voluminous that judicial economy counsels in favor of retaining jurisdiction." (internal citations omitted)).  Accordingly, this Court declines to exercise supplemental jurisdiction over South's NYCHRL claim, which is dismissed without prejudice.

<u>CONCLUSION</u>

Defendant Continental Casualty Company's motion for summary judgment is granted with respect to South's employment discrimination and hostile work environment claims under the ADEA and NYSHRL.  This Court declines to exercise supplemental jurisdiction over South's NYCHRL, which are dismissed without prejudice.  The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: February 28, 2017
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.